**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NATALIA BUBCHYKAVA,

        Plaintiff,

vs.

NETHERLAND GARDENS CORPORATION; FIRSTSERVICE RESIDENTIAL NEW YORK, INC.; and EDMOND GJERGJANI,

        Defendants.

Case No. 23-cv-10378

**COMPLAINT AND JURY DEMAND**

---

### Introduction

1. This is a sexual assault case.

2. Netherland Gardens Corporation owns and operates a residential cooperative complex located in the Bronx. It contracts with FirstService Residential New York, Inc. to provide property management and other services for the complex. Edmond Gjergjani works there as a maintenance person. Natalia Bubchykava owns and lives in a unit there.

3. During a mandatory inspection of Bubchykava's home by Gjergjani, Gjergjani sexually assaulted Bubchykava. Then, after initially removing Gjergjani from the complex, Netherland and FirstService inexplicably allowed him to return.

4. Bubchykava now sues to recover for her injuries.

### Jurisdiction & Venue

5. This court has subject-matter jurisdiction over this case under 28 U.S.C. § 1331 because of Bubchykava's federal Fair Housing Act claim.

1

6. This court has subject-matter jurisdiction over Bubchykava's remaining claims under 28 U.S.C. § 1367 because they arise from the same facts as her federal claim.

7. Venue is proper in this judicial district because the relevant events occurred in the Bronx.

## Parties

8. Plaintiff Natalia S. Bubchykava is a person living in the Bronx. She is a shareholder of Netherland Gardens Corporation and lives in the housing complex there.

9. Defendant Edmond Gjergjani is a person living in New York. At all relevant times he was either employed by, or an agent of, defendants Netherland Gardens Corporation and FirstService New York, Inc.

10. Defendant Netherland Gardens Corporation is a New York cooperative housing corporation.

11. Defendant FirstService Residential New York, Inc. is a New York corporation with its principal place of business in Dania Beach, Florida. It is, ultimately, an indirect subsidiary of FirstService Corporation, a publicly traded Canadian conglomerate with over 20,000 employees.

## Allegations

*Netherland Gardens Corporation*

12. Netherland Gardens is a 462-unit cooperative community in Northern Riverdale, Bronx, New York.

13. It is owned by Netherland Gardens Corporation.

14. The Corporation contracts with FirstService Residential New York to provide property management and other services.

15. At all relevant times, Edmond Gjergjani worked at Netherland Gardens as a maintenance worker.

16. On information and belief, Gjergjani was employed by either the Corporation, FirstService, or both and was subject to the direction of both in his work.

*Natalia S. Bubchykava*

17. Natalia Bubchykava grew up in Belarus before coming to the United States in 2002.

18. Since 2004, she has worked for the United Nations at its headquarters. She speaks four languages and holds an MBA and degrees in economics and international relations.

19. Bubchykava became a shareholder and resident of the Corporation in 2013 when she bought a unit there.

20. Since then, Bubchykava's unit at Netherland Garden has been her home.

21. Bubchykava raised her son there.

*Gjergjani Assaults Bubchykava*

22. On March 31, 2023, FirstService emailed Bubchykava and other owners at Netherland Gardens to schedule mandatory inspections of their homes.

23. Bubchykava responded by email the next day to schedule her inspection.

24. Three days later, on April 4, 2023, Edmond Gjergjani came to perform the inspection.

25. Gjergjani arrived with a preprinted form to record the inspection results.

26. At first, Gjergjani appeared to perform a normal inspection, going room to room, and taking notes.

27. During this first part of the inspection, the two discussed the building as Gjergjani did his work.

28. Then the inspection reached the bedroom of Bubchykava's son.

29. In that narrow room, Gjergjani manuevered himself to trap Bubchykava between himself and the outdoor-facing wall.

30. In that arrangement, Bubchykava could not get past Gjergjani to leave the room.

31. Gjergjani then grabbed Bubchykava and pulled her close to him.

32. He started pulling at her clothes.

33. He put his mouth on her mouth and face.

34. He used one hand to hold Bubchykava by the neck and pull her close as he ran his other hand all over Bubchykava's body, groping and squeezing her breasts, arms, and buttocks.

35. Bubchykava was stunned.

36. Because of how Gjergjani positioned himself and his hold on her, Bubchykava could not physical escape or move.

37. She asked Gjergjani: "What is going on?" Gjergjani responded: "You know what's going on." Bubchykava asked what he meant, and he said, "Sex!"

38. At that moment, Bubchykava came to believe that if she did not resist, she would be raped. She put her hands on Gjergjani's chest and pushed hard.

39. Gjergjani paused, looked at Bubchykava, and then said, "I probably need to go."

40. He then left the room and the residence.

41. Bubchykava did not consent to, ask for, or in any way want Gjergjani to assault, confine or harass her.

*Bubchykava Reports the Assault*

42. For the first several days after the assault, Bubchykava was in shock. She reported the assault to her brother, who convinced her to report it to management.

43. Bubchykava then emailed FirstService staff to report that Gjergjani had assaulted her.

44. A FirstService staffer spoke to Bubchykava after receiving Bubchykava's email, telling Bubchykava that Gjergjani is "no longer employed" at the complex.

45. But roughly two months later, Gjergjani was back at work at the complex.

46. No one at Netherland Gardens or FirstService consulted with or warned Bubchykava that Gjergjani was coming back.

47. Bubchykava only found out because Gjergjani approached her son.

48. At that time, Bubchykava had not shared the assault with her son. But when the son reported to Bubchykava that Gjergjani was back and had spoken with him, Bubchykava froze and became physically ill.

49. Bubchykava's son then realized something was wrong, asked Bubchykava about it, and Bubchykava told her son what Gjergjani had done.

50. Bubchykava quickly wrote to the FirstService staffer who had told her that Gjergjani was fired, asking for an explanation.

51. That staffer wrote back that she "understood [Bubchykava's] frustration; however, the decisions of Netherlands Gardens Corp are made by the Board of Directors and not by Management."

52. Since then, neither Netherland nor FirstService has done anything to help Bubchykava with her complaint about Gjergjani.

53. The day after Bubchykava learned that Gjergjani had returned, she still felt physically ill with fear.

54. Bubchykava visited her brother, who has medical training.

55. The brother took Bubchykava's blood pressure and, because it was high, suggested that Bubchykava order a home blood-pressure monitor and see her doctor. Bubchykava ordered the monitor that day.

56. Bubchykava spent the next few days, a weekend, at home.

57. The following Monday, Bubchykava saw Gjergjani through her window. Her blood pressure immediately spiked, and she felt ill.

58. Bubchykava called her doctor's office and, hearing the blood pressure reading, the doctor's office advised Bubchykava to come in immediately.

59. Bubchykava did so and left with a prescription for blood pressure medication and a note for work saying that she "needs to be on bed rest for 5 days."

60. On top of the blood pressure, Bubchykava has also experienced other symptoms as a result of Gjergjani's assault and sudden reappearance.

61. Bubchykava has developed a stutter, especially when speaking about the assault or Gjergjani.

62. Bubchykava has experienced numbness and weakness in her hands, a condition for which she is now seeing a neurologist.

63. Bubchykava has also started seeing a therapist weekly to manage her symptoms.

64. With the support of her brother and medical providers, Bubchykava also reported Gjergjani's assault to the New York Police Department.

**Claims for Relief**

Count 1 – Fair Housing Act, 42 U.S.C. § 3601

Against All Defendants

65. Bubchykava incorporates all other allegations here.

66. Defendants injured Bubchykava by committing discriminatory housing practices in violation of the federal Fair Housing Act, including:

    a. Hostile environment sexual harassment in violation of 24 C.F.R. § 600.100(a)(2); and,

    b. Discriminatory statements in violation of 42 U.S.C. § 3604(c).

67. Bubchykava is therefore entitled to compensatory damages, punitive damages, declaratory relief, attorneys' fees, and costs under 42 U.S.C. § 3613(c).

68. Each Defendant is directly liable or vicariously liable for the discriminatory housing practices under 24 C.F.R. § 100.7.

Count 2 – Negligence
Against Netherland Gardens and FirstService

69. Bubchykava incorporates all other allegations here.

70. Each Defendant other than Gjergjani owed Bubchykava a duty to hire, train, supervise, and discipline Gjergjani so as to prevent him from sexually harassing or assaulting Bubchykava.

71. Each Defendant other than Gjergjani also owed Bubchykava a duty to consult with or, at least inform and warn, Bubchykava, before allowing Gjergjani to return to the complex.

72. Each Defendant other than Gjergjani breached those duties, causing Gjergjani's harassment and assault of Bubchykava.

73. The breaches therefore injured Bubchykava.

74. Bubchykava is therefore entitled to compensatory and punitive damages.

## Count 3 – Assault

### Against All Defendants

75. Bubchykava incorporates all other allegations here.

76. Gjergjani put Bubchykava in imminent fear of an offensive, unreasonable, unconsented, and unpermitted touching.

77. Each Defendant is directly liable or vicariously liable for that conduct.

78. That conduct injured Bubchykava.

79. Bubchykava is therefore entitled to compensatory and punitive damages.

## Count 4 – Battery

### Against All Defendants

80. Bubchykava incorporates all other allegations here.

81. Gjergjani battered Bubchykava by making offensive and harmful contact with her, he intended to do so, and she did not consent to, nor was the contact permitted.

82. Each Defendant is directly liable or vicariously liable for that conduct.

83. That conduct injured Bubchykava.

84. Bubchykava is therefore entitled to compensatory and punitive damages.

## Count 5 – False Imprisonment

### Against All Defendants

85. Bubchykava incorporates all other allegations here.

86. Gjergjani intended to and did use his body, manner, and physical surroundings to prevent Bubchykava from moving freely and to confine her without lawful authority or justification.

87. Bubchykava was conscious of the confinement and did not consent to it.

88. Each Defendant is directly liable or vicariously liable for that conduct.

89. That conduct injured Bubchykava.

90. Bubchykava is therefore entitled to compensatory and punitive damages.

//

//

## Prayer for Relief

91. Bubchykava prays for a judgment with the following relief:

   a. Compensatory damages,

   b. Punitive damages,

   c. Attorneys' fees and costs,

   d. Pre- and post- judgment interest,

   e. Declaratory relief, and

   f. All other relief that the court finds just.

Dated: November 28, 2023

Respectfully submitted,

 /s/ Thomas R. Kayes

Thomas R. Kayes*
THE CIVIL RIGHTS GROUP, LLC
2045 W Grand Ave, Ste B, PMB 62448
Chicago, IL 60612
t. 708.722.2241
tom@civilrightsgroup.com
www.civilrightsgroup.com

Colleen M. Meenan
Lissett C. Ferreira
MEENAN & ASSOCIATES, LLC
299 Broadway, Ste 1310
New York, NY 10007
t. 212-226-7334
cmm@meenanesqs.com
lcf@meenanesqs.com

*PHV application forthcoming

Attorneys for Plaintiff

**Demand for Jury Trial**

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all issues.

Dated: November 28, 2023

                          Respectfully submitted,

                          /s/ Thomas R. Kayes
                          Thomas R. Kayes*
                          THE CIVIL RIGHTS GROUP, LLC
                          2045 W Grand Ave, Ste B, PMB 62448
                          Chicago, IL 60612
                          t. 708.722.2241
                          tom@civilrightsgroup.com
                          www.civilrightsgroup.com

                          Colleen M. Meenan
                          Lissett C. Ferreira
                          MEENAN & ASSOCIATES, LLC
                          299 Broadway, Ste 1310
                          New York, NY 10007
                          t. 212-226-7334
                          cmm@meenanesqs.com
                          lcf@meenanesqs.com

                          *PHV application forthcoming

                          Attorneys for Plaintiff